Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

REX CHRONISTER
CFF LAW
309 N. 7TH STREET
PO BOX 66
FORT SMITH AR 72902

EXHIBIT

B

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

September 22, 2020

Rex W. Chronister
Cff Law
309 N. 7TH STREET
PO BOX 66
FORT SMITH, AR 72902

RE: Long Term Disability (LTD) Benefits
OGE Energy Corp.
Claim #: 8205360
Claimant: Wesley Kenney

Dear Rex Chronister:

We reviewed your appeal request for Long Term Disability ("LTD") benefits on behalf of Wesley Kenney and maintained the decision to deny benefits beyond January 16, 2020.

**Initial Claim Decision**

Ms. Kenney submitted a claim for his absence from work as of March 16, 2018, as a result of dizziness and balance issues due to CP Angle tumor. LTD benefits were approved from September 12, 2018 through January 16, 2020. Benefits beyond January 16, 2020 were denied as the evaluation concluded Mr. Kenney was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated January 18, 2020. Mr. Kenney was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, he was advised to submit the following information: *"All office visit notes, test results, lab results, prescription histories, hospital records, discharge summaries, x-ray reports, consulting physician reports, pharmacy records, physical and occupational therapy notes, MRI results, CT scan results, mental health status evaluations, and treatment plans, and specific restrictions and limitations from March 2018 to the present from any and all other treating providers you have treated with for your medical condition. You should also provide any additional information that you feel will support your claim."*

**Appeal**

We received your letter of appeal dated May 20, 2020 on behalf of Mr. Kenney. In support of Mr. Kenney's claim, the following additional information was submitted:

- *Residual Functional Capacity Form completed by Dr. Tonya Phillips*

This appeal review and analysis considered all the medical and claim documentation contained in your Long Term Disability administrative record, whether or not specifically referenced in this document.

<u>Appeal Evaluation</u>

During the claim evaluation of ongoing benefits, Mr. Kenney's claim was reviewed by Dr. Jennifer A. King, an independent physician who is board certified in Family Medicine. Following a complete review of Mr. Kenney's file, Dr. King concluded the available medical evidence supports restrictions and limitations of no climbing except stairs or working from heights or other activity that would increase risk of falls or imbalance related to Mr. Kenney's claimant's chronic use of anti-coagulants for paroxysmal atrial fibrillation and dizziness. Further, Dr. King stated,

> *Per medical records, claimant has paroxysmal atrial fibrillation requiring long term use of an anticoagulant, dizziness, brain tumor and right hemifacial muscle spasm. Per office visit note on 3/7/2019 with Dr. Adjei, cardiologist, claimant's atrial fibrillation was stable on medication but still required daily anti-coagulant. Claimant's dizziness was reported as none occurring recently, and physical exam was normal except for facial asymmetry. Per claimant's office visit with Tonya Phillips, 6/6/2019, in the review of systems there are no reports of balance issues, falls, or dizziness and claimant was treated with Botox for his facial asymmetry and was to follow up in 3 months.*
>
> *Per medical records, claimant's daily use of anti-coagulant therapy would result in restrictions and limitations of no climbing except stairs or working from heights or other activity that would risk falls or imbalance due to risk of bleeding if an injury were to occur. Claimant could supervise this type of work but should be very careful lifting or using heavy equipment.*

Mr. Kenney's file was also reviewed by a Vocational Case Manager, who completed an Occupational Analysis in order to compare his job, Foreman A Transmission to the occupation in the National Economy, per the DOT of Maintenance-Mechanic Supervisor and Maintenance Superintendent as it is normally performed in the national economy. The analysis showed Mr. Kenney's occupation is most often performed at the light and medium levels of physical demand based on the Department of Labor descriptions found in the DOT, with opportunities at both levels.

The Department of Labor defines Light work as,

*"**L-Light Work** - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be*

*and is physically demanding of a worker even though the amount of force exerted is negligible."*

*Positional requirements in light environments include:*

***Frequent** sitting, standing, walking, reaching, handling and fingering*
***Occasional** bending/stooping and twisting*
***No** crawling, crouching/squatting, climbing, balancing or kneeling*

Following these reviews, the disability case manager determined Mr. Kenney was no longer Disabled as defined by the Policy and that no further benefits were payable beyond January 16, 2020.

During the review of Mr. Kenney's appeal, his claim was reviewed by Dr. Mark A. Sims, an independent physician Board Certified in Cardiovascular Disease and Internal Medicine. Dr. Sims attempted to contact Mr. Kenney's primary care provider, Dr. Westbrook and cardiologist, Dr. Adjei to discuss his case. Dr. Westbrook's office advised that Dr. Westbrook does not engage in disability assessments. Telephone contact with Dr. Adjei was not successful.

Following a complete review of Mr. Kenney's file, Dr. Sims concluded the available medical evidence supports diagnoses of paroxysmal atrial fibrillation, hypertension, and bradycardia. However, Dr. Sims opined no restrictions other than no work at unprotected heights due to treatment with Xarelto
are warranted. Further Dr. Sims stated,

> *This review is from a Cardiovascular Disease perspective. The claimant is a 46-year-old male who has reported date of disability of 3/16/18. The claimant has a diagnosis of neoplasm of unspecified behavior of brain. The period in review is from 01/17/20 to the present.*
>
> *The claimant does experience paroxysmal atrial fibrillation however the records provided for review are limited and do not address the issues of structural heart disease, recent recurrence of arrhythmia, other cardiovascular comorbidities such as coronary artery disease or LV dysfunction and do not provide a test based assessment of functional capacity such as stress testing or Cardiopulmonary stress testing.*
>
> *Due to a lack of data the claimant's cardiovascular-based functional capacity is not addressed by the limited records provided for review therefore cardiovascular based impairment is not supported. If additional data should become available that would alter/impact this assessment it should be considered.*
>
> *Medical information not in the file that if it became available, could be helpful are:*
>
> *1. Event monitoring*
> *2. Echocardiography*
> *3. Stress Testing*
> *4. NT ProBNP determinations*
>
> *Based on review of the totality of provided medical records.*

During the review of Mr. Kenney's appeal, his claim was also reviewed by Dr. Norman Burns, an independent physician Board Certified in Neurology. Dr. Burns attempted to contact Mr. Kenney's neurologist, Dr. Tonya Phillips, however, telephone contact was not successful.

Based on his review of the medical records, Dr. Burns indicated diagnoses include CP angle mass, vertigo, and hemifacial spasm. However, there was no documentation to support a neurologic diagnosis or impairment leading to restrictions or limitations from January 17, 2020 to present. Further Dr. Burns stated,

> *This review is from a Neurological perspective. The claimant is a 46 year old male who has a listed diagnosis of "neoplasm of unspecified behavior of brain." This review is to determine if the claimant was functionally impaired from 01/17/2020 to present. The claimant's date of disability was noted to be 03/16/2018.*
>
> *The claimant has a long history of right hemifacial spasm well controlled with serial Botox injections. The claimant has known right CP angle benign lipoma that is stable over an 8 year period. The claimant developed dizziness and vertigo.*
>
> *MRI noted a stable CP angle tumor with no change in 8 years. Neurosurgical evaluation did not warrant any surgical intervention. Botox treatments have continued.*
>
> *The medical documentation does not support any medical condition alone, or in combination, that would preclude the claimant from sustained occupational functioning on a full-time basis from 01/17/2020 to present*
>
> *The medical records do not support any neurologic diagnosis or impairment for the timeframe of 01/17/2020 to present. There were no medical records provided since June of 2019 (seen for Botox injections).*
>
> *Updated medical records from 01/17/2020 to present that document a neurological diagnosis and examination/evaluation findings would be helpful.*

Since telephone contact with Dr. Phillips was not successful, Dr. Burns faxed a question letter to Dr. Burns on July 02, 2020. A response was received via fax from Dr. Phillips on July 09, 2020 indicating that she has followed Mr. Kenney for several years for right hemifacial spasm. She indicated he has also had progressive difficulty with dizziness to the point that it affects his balance, his ability to drive, and his ability to work. Dr. Phillips stated that Mr. Kenney has difficulty climbing at any height as well as working on a computer for prolonged periods of time due to visual symptoms and vertigo. She noted he has a very large 2.2 cm right CP angle tumor which at this time is not felt to be resectable and is being monitored. He has been evaluated by neurosurgery. At this time she stated he is being treated symptomatically with Botox injection for his hemifacial spam which have been effective. Dr. Phillips indicated he has been given various medications for the dizziness none which have been very effective and cause more side effects. She stated his last visit was June 17, 2020 and he is followed every three months.

On July 07, 2020, we sent you a letter which included a copy of the clinical reviews performed in connection with Mr. Kenney's request for appeal. You were given an opportunity to review and

respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of July 28, 2020.

We received a letter from your office dated July 21, 2020 in response to the clinical reviews completed in connection with Mr. Kenney's request for appeal. In your letter you indicated that the medical reviews allege to be for the period of January 17, 2020 through June 20, 2020, however, medical records which occurred during that timeframe were not considered. You stated there is no reference to the consideration of the Residual Functional Capacity Evaluation by Dr. Phillips dated April 01, 2020. You also indicated that requests were made to Dr. Abdul-Nasser Adjei, however, Mr. Kenney changed cardiology physicians to Dr. Sastry V. Trayaga.

We also received a voice message from you on July 20, 2020. During a telephone conversation on July 21, 2020, you reported that you would require additional time and were in the process of obtaining additional medical information from Mr. Kenney's treating providers. At that time, we granted an extension and requested that any additional documentation you wished to have considered for Mr. Kenney's appeal be submitted no later than August 18, 2020.

On August 20, 2020, we contacted your office by phone to inquire as to whether you were still in the process of obtaining additional documentation to be considered for Mr. Kenney's appeal. A message was left with Brooklyn at that time. To date, we have not received a return call or any additional documentation from your office.

Mr. Kenney's file was referred for an addendum review by independent neurology physician, Dr. Norman Burns. Dr. Burns indicated there was no change to his prior assessment. The clinical review concluded the medical records do not support a neurologic impairment warranting restrictions or limitations for the time of January 17, 2020 and continuing. Mr. Kenney has a diagnosis of hemifacial spasms, which is specifically documented as "effective." Dr. Burns indicated there is no documentation of how the neurologic diagnosis leads to any physical or functional impairment. In addition, Mr. Kenney has a diagnosis of a CP angle tumor. This has been stable for 8 years with no surgical intervention needed. Dr. Burns indicated there is no documentation supporting an impairment from the neurologic diagnosis or how it would prevent the Mr. Kenney from performing his occupation.

The additional information received with Ms. Kenney's appeal has been considered. However, there were no new diagnostic test results, office treatment notes, treatment plans, or evaluations included to change the prior assessment.

Determinations made by Lincoln Financial Group are based on the provisions outlined in the OGE Energy Corp. LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Group Disability Income Policy.

**Conclusion**

We conducted a thorough and independent review of Mr. Kenney's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond January 16, 2020. However, the information does not contain exam findings,

diagnostic test results or other forms of medical documentation supporting his impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of his occupation after that date.

Having carefully considered all of the information submitted in support of Mr. Kenney's claim, our position remains that proof of his continued disability in accordance with the Policy provisions after January 16, 2020 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***Disability Benefit***

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining*
*whether the Covered Person is Disabled, Liberty will not consider employment factors including, but*
*not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.*

***"Disability"*** *or* ***"Disabled"*** *means:*

*Applicable to Class 1:*

*b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit,* ***"Disability"*** *or* ***"Disabled"*** *means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

***" "Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Discontinuation of the Long Term Disability Benefit***

*The Monthly Benefit will cease on the earliest of:*

*1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;*
*2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.*
*3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;*
*4. the date the Covered Person refuses to receive Appropriate Available Treatment;*
*5. the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;*
*6. the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;*
*7. the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Indexed Basic Monthly Earnings;*
*Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Indexed Basic Monthly Earnings has been exceeded.*
*8. the date the Covered Person is no longer Disabled according to this policy;*
*9. the end of the Maximum Benefit Period; or*
*10. the date the Covered Person dies.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The OGE Energy Corp. Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is October 21, 2023.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in the OGE Energy Corp. LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Tawnya Valliere
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 15894
Secure Fax No.: (603) 422-7909